E-FILED
Tuesday, 15 May, 2007 10:28:01 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| VILLAGE OF DEPUE, ILLINOIS, | ) | |
| | ) | |
|     Plaintiff, | ) | No. 06-1266 |
| | ) | |
| v. | ) | |
| | ) | |
| EXXON MOBIL CORP, et al, | ) | |
| | ) | |
|     Defendant. | ) | |

## O P I N I O N   &   O R D E R

In this state action, removed to federal court on diversity grounds, Plaintiff Village of Depue, has sued Defendant Exxon Mobil Corporation, aka Mobil Chemical Corporation; Viacom International, Inc.; and CBS Broadcasting Inc. (collectively referred to as "Defendants") for declaratory judgment, injunctive relief, and to recover fines for maintaining certain real estate as a public nuisance due to the presence of hazardous substances at the Site in violation of its nuisance ordinance. All Defendants have filed a Motion to Dismiss (Doc. 20) pursuant to Federal Rule of Civil Procedure 12(b)(6). The Village has filed a Response to the Motion. (Doc. 28.) In addition, Defendants filed a Motion for Leave to File a Reply Memorandum (Doc. 31) and Plaintiff filed a Response (Doc. 32) to that Motion. For the following reasons, the Motion to Dismiss is allowed.

# I.
## BACKGROUND

This case concerns a property ("the Site") located in the Village of Depue, Illinois ("the Village").  The Site has sustained serious environmental damage and has been investigated by the Environmental Protection Agency ("EPA"). In 1999, the Site was added to the EPA's National Priority List ("NPL").[1]  The NPL lists those sites in the United States that are most in need of cleanup.

### 1. History and Scope of the Site

The Site consists of a former zinc processing facility and a former diammonium phosphate fertilizer manufacturing facility operated by the corporate predecessors of Defendants CBS Operations and Exxon Mobil and third party Horsehead Industries, Inc. (who is not a party to this action).  From 1903 to 1989, the industrial operations at the Site included zinc smelting, paint pigment production, sulfuric acid manufacturing, and diammonium phosphate fertilizer production.  The Site is massive, spanning over 1500 acres (including the former manufacturing facilities and adjacent areas that might be

---

[1] Plaintiff has attached the NPL fact sheet to their complaint. The Court has relied upon this document in compiling the facts in this case which for purposes of this motion are presumed to be true.  Documents attached to a complaint can be considered by a court when addressing a Motion to Dismiss. Thompson v. Illinois Dept. of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002).

impacted by historical releases).

All manufacturing facilities were demolished by 1992.  To the south and east of the former manufacturing plants, there are a former municipal dump, rail lines, and DePue Lake - an Illinois River backwater lake.  Waste generated by the manufacturing operations was disposed of on the Site.  The major waste units include a slag pile (with over a million tons of zinc slag), a cinder fill area, paint pigment production waste piles, and a phosphogypsum stack covering 160 acres.

According to the NPL fact sheet, the contaminants found on the Site could pose a threat to the local population.  The fact sheets states as follows:

> Elevated levels of cadmium, lead, and other metals were found in residential soil samples. Although the initial health evaluation has documented no short-term threats to nearby populations, under certain conditions elevated concentration of cadmium have been found to pose a number of long-term, adverse health effects.  Furthermore, contamination of a fishery, state wildlife refuge, and wetlands has been documented in Lake DePue…. (Doc. 1, at NPL Fact Sheet p. 2.)

**2. Administrative and Legal History of the Site**

In December 1980, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et. seq., the EPA conducted a preliminary environmental assessment of the Site and additional assessments in July 1983 and May 1984.  This led to the Site

being added to the NPL.

In addition to actions by EPA, Illinois EPA is also involved at the Site.  It conducted an initial investigation in March 1992.  In 1995, the Illinois Attorney General, on his own motion and at Illinois EPA's request, filed suit in Bureau County Circuit Court against the corporate predecessors of Defendants for the recovery of response costs incurred by Illinois EPA at the site.  Shortly thereafter,[2] Defendants agreed to an Interim Consent Order ("ICO") which required, among other things, that the Defendants complete a remedial investigation and feasibility study as well as take remedial action at the Site.

### 3. Key Provisions of the ICO

As provided in the ICO, the Illinois EPA is designated as "implementing agency" for the State of Illinois for all purposes of CERCLA, and is authorized to take all action necessary to secure CERCLA's benefits for the State.  The ICO requires Defendants to perform a phased investigation of the Site and to take certain interim steps leading to final remedial action for the Site.  The ICO's purpose is to determine

> "…the nature and extent of the release, threatened release or presence of Hazardous Substances at or from the Site, to identify and evaluate

---

[2] The Consent Order was signed either in 1995 or 1997. (*Compare* Plaintiff's Complaint at 2, *with* NPL Fact Sheet at 2; Doc. 1 Ex. D at 1; Doc. 21 at 3.)

alternatives for remedial action that will be protective of human health and the environment and *that will be consistent in all respects with the Illinois Hazardous Substance Pollution Contingency Plan and the National Oil and Hazardous Substances Pollution Contingency Plan…."* (Doc. 1 at Ex. D.)(emphasis added)

To accomplish the ICO's objectives, Defendants are required to conduct a remedial investigation of the Site and surrounding area, including DePue Lake and the Village; implement interim remedial actions; and propose a feasibility/design study for any final remedies.  All work under the ICO must be consistent with the regulatory environmental framework mandated by CERCLA, the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), and the Illinois Hazardous Substances Contingency Plan ("ICP").

Under the ICO, the State of Illinois, in consultation with EPA, has "sole discretion" to decide if presumptive final remedies proposed by Defendants are appropriate.  Although EPA is not a party to the ICO, the ICO is clear that EPA plays a vital role at the Site by ensuring NCP consistency and by approving contractors, Site work plans, and Defendants' studies for final remedial action at the Site.  The State of Illinois, in consultation with the EPA, will select the final remedial actions for the Site.

The EPA noted, in its most recent Superfund Report, that Defendants have been fulfilling the requirements of the ICO.  In accordance with the ICO, Defendants have completed extensive

interim remedial actions at the Site.[3]  Defendants have completed
the first phase of the remedial investigation of the former
plant site area and have proposed a second phase of that
investigation.  Defendants have begun investigation of
potentially impacted soils within the Village and have initiated
the remedial investigation of DePue Lake and surrounding
wetland/flood plain areas.  As part of this investigation,
extensive data will be (and has been) gathered to support
ecological and human health risk assessments of this area.  Once
all phases of the remedial investigation are complete,
Defendants will conduct feasibility/design studies for a final
remedy.

### 4. Proceedings in the Case at Bar

However, from the Village's perspective, these numerous
investigative actions do not address their primary concern –
namely a more expeditious cleanup of the Site.  After ten years
of waiting under the ICO for the Defendants to completely
remediate the environmental damage at the Site, the Village has
now filed this claim.  The Village is not a party to the ICO and

---

[3] These interim remedial actions include: an initial health
evaluation documenting no short-term threat to public health;
increasing security and restricted access to portions of the
Site; revegetating portions of the Site; diverting clean surface
water away from the Site; constructing a metals removal water
treatment system; cleanup of the former vanadium catalyst
disposal area; closure of the phosphogypsum stack effluent
ponds; and dredging sediments from the South Ditch, a drainage
channel tributary to DePue Lake.

is not seeking to enforce the terms of the ICO.  Instead, the Village's claim is based upon its local nuisance ordinance. Specifically, the Village alleges that the Defendants are in violation of the Village of DePue Code 7-5-3. (Doc. 1 at Ex 1, Part 4, p. 12).  While the Village of Depue Code does not define a nuisance, it does provide for a fine between $25 and $750 per offense.  Furthermore, the Code states that every twenty-four hours that an offender fails to abate a nuisance constitutes a separate offense.  As a result, the Defendant could receive a maximum fine in this suit of $750 per day.

The Village also alleges that the Site poses a public health and safety risk to the residents of the Village of DePue and constitutes a blighting of the area, diminishing property values and imposing economic costs to the residents and the Village itself.  The Village seeks several forms of relief including a declaration that Defendants are in violation of the nuisance ordinance, injunctive relief requiring Defendants to remove the pollutants from the site, and a fine of $750 per day for violating the local ordinance.

In the Motion before the Court, Defendants have moved to dismiss the case on preemption grounds.  There are currently three issues before the Court: (1) Whether, under the ICO, Defendants waived preemption and consented to complying with local ordinances; (2) Whether the claim is preempted by the

federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"); and (3) Whether the Village's claim is preempted by the Illinois Superfund Program.

At the hearing on this matter the Court was able to view an aerial photograph of the Village which showed that the polluted site surrounds and runs right up against the small community. Also, at the hearing a representative for the Village put forward facts which, while germane to the Motion at bar, gave the Court an idea of the significance of this case to the prosperity of the Village.  The representative expressed his extreme frustration with Defendants and the relevant State agencies for not making any significant progress at the Site since the ICO was entered.  According to the representative, because of the lack of progress, the town is literally "dying." (Doc. 36 at 53)

## II.
## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the Complaint in the light most favorable to the plaintiff and the Complaint's well-pled factual allegations must be accepted as true. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted.

Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73
F.3d 1423, 1429-30 (7th Cir. 1996).  However, the Court is not
bound by a plaintiff's legal conclusions.  Baxter by Baxter v.
Vigo County School Corp., 26 F.3d 728, 730 (7th Cir. 1994).  The
province of Rule 12(b)(6) motions is to question the
availability of a legal formula justifying relief on the alleged
facts, not to test or determine the facts themselves.  Maple
Lanes, Inc. v. Messer, 196 F.3d 823, 824-25 (7th Cir. 1999).

**III.**
**ANALYSIS**

Once again, the three issues before the Court are (1)
whether under the ICO Defendants waived preemption and consented
to complying with local ordinances such as the Village's; (2)
whether the claim is preempted by CERCLA; and (3) whether the
Village's claim is preempted by the Illinois Superfund Program.

**1. Preemption Waiver**

Plaintiff argues that Defendants waived any preemption
defense when they signed the ICO.  The ICO contains the
following language:

> In   addition   to   statutes   and   regulations
> specifically  referenced  herein,  all  work  and  other
> activities  required  of  Defendants  pursuant  to  this
> Interim  Consent  Order  shall  be  performed  in  compliance
> with  all  applicable,  federal  state  and  local  laws  and
> all  applicable,  or  relevant  regulations,  including  but
> not  limited  to  all  Occupational  Safety  and  Health
> Administration      regulations,      Department      of
> Transportation  regulations,  the  Solid  Waste  Disposal
> Act,  as  amended  by  the  Resource  Conservatism  and

Recovery Act of 1976 and the Hazardous and Solid Waste Amendments of 1984,… and such other statutes or regulations as are applicable or relevant and appropriate to the Site and the Contamination at or from the Site.  In the event of a conflict in application of federal, state, or local laws, ordinances and regulations, the Defendants shall notify the State of said conflict and comply with the more/most stringent of such law, ordinance or regulation.  (Consent Order at 40.)

According to Plaintiff, by agreeing to comply with the most stringent of all applicable federal, state and *local laws and ordinances*, Defendants waived their argument that the subject matter of this lawsuit was preempted by superior laws.  However, this portion of the ICO does not apply in this case because (1) the clause only applies to how the work is performed and not what work is to be performed by Defendants; and (2) Plaintiff is not a party to the ICO and can not enforce its terms.

Under any reasonable interpretation, this provision requires Defendants to comply with local ordinances when they are performing actions required by the ICO. It goes to the manner in which work is performed rather than what work is to be done as dictated by the ICO.  The ICO states that "all work… required of Defendants pursuant to this Interim Consent Order shall be performed in compliance with all… local laws and all applicable, or relevant regulations…."  The section then lists some relevant work related statutes such as OSHA which Defendants must comply with when performing work required by the

ICO.  Defendants accurately pointed out that if they hired
workers to haul away material, and they dumped that material in
violation of the nuisance ordinance, then they would be bound by
this section of the ICO.  (Tr. at 39)  However, this suit is not
brought against Defendants for work that Defendants have
performed pursuant to the ICO.  Instead, Plaintiff is seeking to
force Defendants to perform all necessary work to cleanup the
entire Site immediately rather than in phases as dictated by the
ICO.  Accordingly, this provision of the ICO does not constitute
a waiver of the preemption issue or consent to compliance with
the Village's nuisance ordinance.

     Furthermore, even if Defendants did consent under the ICO
to the application of local ordinances, the Village is not a
party to the ICO, and as a result, it cannot seek to enforce
this provision of the ICO.  Although they have the force of a
court order, consent orders are a form of contract to be
construed according to the basic principles of contract
interpretation.  United States v. IFF Continental Baking Co.,
420 U.S. 223, 238 (1975).  The ICO in this case was between the
Office of the Illinois Attorney General and the Defendants'
corporate predecessors: the Village was not a party.

     Not just anyone can sue to enforce the terms of a Contract.
A third party beneficiary to a contract can bring a suit to
enforce the terms.  Johnson Bank v. George Korbakes & Co., LLP,

11

472 F.3d 439 (7th Cir. 2006).  However, parties to contracts are naturally reluctant to empower a third party to enforce their contract, so ordinarily third party beneficiary status is not inferred from the circumstances but must be expressed.  Id. "Under Illinois law, there is always a strong presumption that contracting parties bargain and agree for themselves and only incidentally for third persons." F.W. Hempel & Co. Inc. v. Metal World, Inc., 721 F.2d 610, 614 (7th Cir. 1983).  As a result, "the promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary." Wheeling Trust & Savings Bank v. Tremco Inc., 505 N.E.2d 1045, 1048 (Ill. App. Ct. 1987).

In the case at bar, the Village has attached the entire ICO to the complaint filed in this case.  (Doc. 1 at Ex D).  There does not appear to be any provision within the ICO which names the Village as a third party beneficiary to the State's action. While the Village may receive the benefits of the State enforcing the ICO, the Village has not pointed to any provision within the ICO which names the Village as a third party beneficiary with the authority to enforce the provisions of the agreement; and, the Villages makes no pretensions in that regard.  Accordingly, Defendants have not waived their preemption argument.

## 2. CERCLA Preemption

CERCLA was enacted to ensure the efficient and expeditious cleanup of contaminated sites.  U.S. v. Kramer, 770 F.Supp. 954, 958 (D.N.J. 1991).  Under CERCLA, the government, through EPA, can either clean up the contaminated site itself or order a party responsible for the pollution to clean up the site.  In 1986, Congress extensively amended CERCLA by enacting the Superfund Amendments and the Reauthorization Act of 1986 ("SARA").  A salient feature of SARA is the "Timing of Review" provision in § 113(h), intended to ensure prompt cleanup of contaminated sites by barring legal challenges to cleanup at a site prior to completion of the CERCLA remedial action.  See Superfund Amendments and Regulations Act of 1986, Pub. L. No. 99-499, § 113(h), 100 Stat. § 1613 (furthering goals of CERCLA by preventing delays of removal and remedial action).  Section 113(h), codified at 42 U.S.C. § 9613(h), provides, in relevant part:

> (h)  Timing of review
>
> No Federal court shall have jurisdiction under Federal law… to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:….[4]

---

[4] The statute enumerates the following exceptions which are legitimate basis for an action under CERCLA:
> (1)  An action under section 9607 of this title to recover response costs or damages or for contribution.

Defendant argues based upon <u>North Shore Gas Co. v. E.P.A.</u>,
930 F.2d 1239, 1244 (7th Cir. 1991), and <u>Schalk v. Reilly</u>, 900
F.2d 1091 (7th Cir. 1990), that "the obvious meaning of [section
113(h)] is that when a remedy has been selected, no challenge to
the cleanup may occur prior to completion of the remedy."  <u>Id</u>.
at 1095.

On the other hand, CERCLA was not meant to preempt the
field and preclude enforcement of state or local environmental
laws.  There are several sections of CERCLA which allow for a
claim to proceed under state law.[5]  First, CERCLA § 114(a) states
that "[n]othing in this chapter shall be construed or
interpreted as preempting any State from imposing any additional

---

(2)   An action to enforce an order issued under section
      9606(a) of this title or to recover a penalty for
      violation of such order.
(3)   An action for reimbursement under section 9606(b)(2)
      of this title.
(4)   An action under section 9659 of this title (relating
      to citizens suits) alleging that the removal or
      remedial action taken under section 9604 of this title
      or secured under section 9606 of this title was in
      violation of any requirement of this chapter. Such an
      action may not be brought with regard to a removal
      where a remedial action is to be undertaken at the
      site.
(5)   An action under section 9606 of this title in which
      the United States has moved to compel a remedial
      action. 42 U.S.C. § 9613(h).
The Village's nuisance action is brought under state law and
does not fall into any of these enumerated exceptions.

[5] Local municipal bodies, as extensions of the State, are
included with the definition of "state."

liability or requirements with respect to the release of
hazardous substances within such State." 42 U.S.C. § 9614(a).
Second, CERCLA § 302(d) states that "[n]othing in this chapter
shall affect or modify in any way the obligations or liabilities
of any person under other Federal or State law, including common
law, with respect to release of hazardous substances or other
pollutants or contaminants...." 42 U.S.C. § 9652(d).  However, a
third section of CERCLA is most applicable to the case at bar.
CERCLA § 310(h) states that "[t]his chapter does not affect or
otherwise impair the rights of any person under Federal, State,
or common law, except with respect to the timing of review as
provided in [Section 113(h)]."  This more specific section of
the statute provides guidance that while a claim can proceed
under state law, if the claim is circumscribed by Section
113(h), then the Court lacks jurisdiction.  In re Gulevsky, 362
F.3d 961 (7th Cir. 2004)("When both a specific and a general
provision govern a situation, the specific one controls.").

In consideration of these expressions of Congressional
intent, it appears obvious that Congress, in enacting CRECLA,
intended that CERCLA should walk "in conjunction with the
federal and state laws in Order to solve the country's hazardous
waste cleanup problems." United States v. State of Colorodo,
990 F.2d 1565, `575 (10th Cir. 1993).  However, the most
persuasive authority is that when a state or local environmental

15

law conflicts with CERCLA mandated remedial actions the bar of §
113(h) apples to deprive the court of jurisdiction until the
remedial work is completed.  See United States v. City and
County of Denver, 100 F.3d 1509 (10th Cir. 1996)(CERCLA
preempted local zoning ordinance that was in actual conflict
with remedial order of EPA); Beck v. Atlantic Richfield Co., 62
F.3d 1240, 1243 (9th Cir. 1995)(district court did not have
jurisdiction over a plaintiff's state law claim for injunctive
relief "because that claim constitutes a challenge to the CERCLA
cleanup effort over which the district court would not have
jurisdiction until the cleanup was completed.").

In Fireman's Fund Insurance Company v. City of Lodi, Cal.,
302 F.3d 928 (9th Cir. 2002), a case somewhat similar to the
case at bar, the City of Lodi, California brought a claim under
a local ordinance to clean up a site.  The site was not on the
National Priority List and the City had entered into an
agreement with the State environmental regulatory agency to
investigate and remediate the hazardous substance contamination
affecting the City.  The Court interpreted CERCLA to allow state
environmental protection cleanup actions and held that the
City's ordinance was not completely preempted by CERCLA (or
California State law) but was preempted to the extent that it

conflicted with CERCLA or State law.[6]  The Ninth Circuit held that an ordinance is in conflict with CERCLA if it "interferes with the accomplishment and execution of CERCLA's full purpose and objectives." Id. at 943.

Our Appellate Court has clearly applied the jurisdictional bar of Section 113(h) in two cases, although those cases do not involve claims brought under municipal ordinances. Schalk v. Reilly, 900 F.2d 1091 (7th Cir. 1990); North Shore Gas Co. v. Environmental Protection Agency, 930 F.2d 1239 (7th Cir. 1991).

In Schalk, citizens brought a suit challenging a consent decree that required a polluter to take certain remedial action including capping an abandoned dump site and burning hazardous waste in a trash-fired incinerator.  The citizens alleged, among other things, that the consent decree's proposed remedial measures were inadequate and unsafe and did not comply with the requirements of CERCLA.  The Court applied Section 113(h) and dismissed the claim for lack of subject matter jurisdiction.

Likewise, in North Shore, our Appellate Court addressed a claim from a polluter that was potentially responsible for cleaning up a Superfund site.  The polluter sought to enjoin a portion of an EPA remediation plan which required polluter to

---

[6] The Court noted without explanation that Section 113(h) was not relevant to the issue in that case – presumably because the state or federal EPA had not commenced any removal or remedial action under CERCLA.  Fireman's Fund, 302 F.3d at 941.

construct a boat slip in an area overlapping with a different Superfund site.  The Court dismissed the polluter's claim because the polluter did not have standing and the claim was barred by Section 113(h).

In both of these cases, the plaintiffs sought to use CERCLA as a vehicle for their claim.  And, in both of the cases, the plaintiffs claims would delay the progress of action taken by the state and federal EPA.  Accordingly, both opinions noted the purpose of section 113(h) was to prevent litigation from delaying remediation.  North Shore, 930 F.2d at 1244; Schalk, 900 F.2d at 1095.  This case is somewhat different.  The Village here is seeking to expedite rather than delay remediation and is applying their local nuisance ordinance to further that cause.

At least one district court has considered a nuisance action under somewhat similar circumstances.  In an unpublished opinion, the Northern District of Illinois addressed a class action claim against alleged polluters who had released arsenic into groundwater.  Ludwig v. Pilkington North America, Inc., 2003 WL 21313567, 56 ERC 2030, 03-c-1086 (N.D.Ill. June 5, 2003).  In Ludwig, the plaintiff's sought both injunctive relief requiring the defendant to clean the polluted site and damages covering the loss of property.  The defendants had previously entered into a Consent Order with the EPA and as a result brought a motion to dismiss relying upon Section 113(h).

18

However, the defendant only moved to dismiss the request for injunctive relief.  After reviewing the legislative history, the Court held that "while § 113(h) does not automatically preclude state law causes of action…, the provision does divest the court of jurisdiction when the remedy sought impacts the remedial action under CERCLA, even where that remedy is based upon a state law cause of action."  Ludwig at *3.

In the case at bar, the ICO implements CERCA and the NCP by its terms and the cleanup under the ICO would be impacted by enforcement of the Village's ordinance.  Prior to any cleanup, other than interim remedial action, the ICO requires a long-term phased remedial investigation with technical oversight by EPA and Illinois EPA.  Once the remedial investigation is complete, the ICO then requires Defendants to initiate and complete a feasibility study for the final remedial action (or, alternatively, a design study for an accelerated presumptive remedy) in conformance with CERCLA and the NCP.  (Id. at Ex. D, Attachment 2, at 2-16 to 2-22).  The feasibility study must include evaluation of the "nine criteria" specified in the NCP, 40 C.F.R. § 300.430(e)(including protection of human health and environment, long-term effectiveness, implement ability, and cost).  The entire process is to be performed consistent with the public participation requirements of the NCP.  See Id. at § 300.430(f).  Following submission of a completed feasibility or

design study, EPA and Illinois EPA will issue a record of decision under the NCP, which is the decision to document selection of the final remedial action for the Site.  The remedial design/remedial action phase follows issuance of the record of decision.  Id. at § 300.435.  Once the remedial action is completed and after consultation with Illinois EPA, EPA will delete the Site from the NPL.  Id. at § 300.425(e).

In sharp contrast to the deliberate step-by-step process prescribed by CERCLA and the NCP and implemented at the Site under the ICO, the Village demands immediate removal of the "pile of pollutants on the plant site."  Furthermore, Plaintiff demands that Defendants "finish, clean and *immediately complete* the Superfund cleanup project to remove the project from the National Priority List of the United States Environmental Protection Agency."  (Compl., Prayer for Relief, b (emphasis added)).  The relief sought by the Village, notably removal of the "pile of pollutants" and "immediate" completion of Site remediation, is squarely in conflict with the detailed ICO/NCP mandated process.  This is especially true since Defendants have not yet completed the remedial investigation, and EPA and Illinois EPA have not approved the final remedial action.  As observed by the district court in Ludwig:

> …a person may bring a state law nuisance suit seeking injunctive relief, without being barred by § 113(h), **so long as the defendant has not entered into a removal or remediation plan with which the plaintiff's claim for injunctive relief may interfere.** Ludwig, 2003 WL 21313567 at *3 (emphasis added).

In the instant case, it is clear that the Village is impatient with the lengthy and slow pace at which CERCLA mandated remediation work is progressing and is attempting to accomplish by enforcement of its nuisance ordinance a more expedited remediation.  The relief being sought by the Village constitutes a challenge under § 113(h) to ongoing CERCLA remediation at the Site directly by seeking injunctive relief to enforce its nuisance ordinance.

However, the Court in Ludwig did not bar the plaintiff's damages claim and there was an open question about whether a claim for damages could proceed.  At the hearing on the Motion to Dismiss, this Court was curious if the Village's claim for the imposition of a fine was sufficiently analogous to a claim for damages as in Ludwig that it could proceed.  A fine could be viewed as an efficient means of assessing the damages imposed on the community by a violation of an ordinance.  For instance, consider a municipality's fine for nuisance: a minor nuisance that can be cleaned in one day would only affect property values slightly and so a fine of between $25 and $750 is a reasonable means of compensating the community for the loss.  However, if the nuisance takes many days to remedy, then a repeated fine of between $25 and $750 may be a necessary means of compensating the community for the diminished property values until the

nuisance is abated.

However, the Village did not make this argument at the hearing.  In deciding that a fine should not be viewed the same as damages, the Court finds persuasive Defendants' argument that a fine is a means of leveraging a party into complying with the requested injunctive relief.  If a fine of $750 is imposed as requested - every day until Defendant complies with the requested injunctive relief - then the fine is simply a means of forcing Defendants into complying with the desired injunction. As such, a fine must reasonably be viewed in the same light as the requested injunctive relief and is a challenge to the remedial action already in place under the ICO.

Accordingly, the Court finds that the Village's claim is preempted by CERCLA Section 113(h) and as a result, Plaintiff's claim for injunctive relief and imposition of a fine is barred because the Court lacks jurisdiction to consider the Village's claim.

### 3. Illinois Superfund Preemption

Defendants argue that the Village's claim is also preempted by the Illinois Superfund Program.  Defendants point out that the Village is a non-home rule unit,[7] and as such the propriety of its ordinances is governed by a two step test.  Under the

---

[7] The Village has fewer than 25,000 citizens and did not elect to become a home rule unit. See Ill. Const., Art. VII § 6(a)

first step, a court first examines whether there is a statute
which "authorizes the village to enact the ordinance at issue."
Pesticide Pub. Policy Found v. Vill. Of Wauconda, 510 N.E.2d
858, 861 (Ill. 1987).   In this case, Defendants acknowledge that
the Village is authorized under the Illinois Municipal Code to
enact and enforce a nuisance ordinance.   (Doc. 21 at 12, citing
65 Ill. Comp. Stat. 5/11-60-2).   However, Defendants contend
that the Village fails the second step of the test.

Under the second step, "even when [a non-home rule village
is] conveyed the authority to regulate in a particular field,
[it] cannot adopt an ordinance if it infringes upon the spirit
of the state law or is repugnant to the general policy of the
state.  Vill. Of Sugar Grove v. Rich, 808 N.E.2d 525, 530 (Ill.
App. Ct. 2004).  According to Defendants, there is a clear
legislative intent in the Illinois Superfund Program to
establish uniformity and a comprehensive statutory and
regulatory scheme and, as a result, the Village's ordinance
infringes upon the spirit of the state law.

Defendants point out that the Illinois Environmental
Protection Act ("IEPA") contains an express finding "that
because environmental damage does not respect political
boundaries, it is necessary to establish a unified state-wide
program for environmental protection…." 415 Ill. Comp Stat
5/2(a)(ii).  Despite this, Illinois courts have noted that

"[t]he Illinois Environmental Protection Act does not expressly provide that the State should operate exclusively in the field." Beverly Bank v. Cook County, 510 N.E.2d 941, 944 (Ill. App. Ct. 1987). Furthermore, the IEPA does not create a regulatory regime where the State is the exclusive actor and local municipalities are excluded. The IEPA explicitly contains an additional finding that "it is the obligation of the State Government… to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act." 415 Ill. Comp. Stat. 5/2(a)(iv).

Part of the Illinois Superfund Program is the Illinois Hazardous Substances Contingency Plan ("ICP"). It is the state counterpart to the federal NCP. Like the NCP, the ICP "establishes methods and criteria for determining the appropriate extent of response" for hazardous substance releases. 35 Ill. Admin. Code 750.401(a). The ICP provides a detailed, phased process of investigations and development of remedial action alternatives that responsible parties must follow before any remedial actions are undertaken. 35 Ill. Admin. Code 750.462-750.469. Pursuant to the ICP, the Illinois EPA alone is authorized to select the remedial actions for an Illinois Superfund site. Id. at 750.469.

The Illinois EPA may through "voluntary agreement" or "judicial process" have responsible parties undertake site remediation. Id. at 750.460. Here, after a complaint was filed, the parties entered a voluntary agreement in the form of

the ICO.  (Compl., Ex. D, Intro.).  The stated purpose of the
ICO is for Defendants to undertake the phased process of
investigation and development of remedial actions required by
the ICP and NCP.  (Compl. Ex. D, III(B)(1)).  Indeed, much of
the ICO sets out in detail the methodologies and procedures
Defendants must follow.  (Id., Ex. D, III(B), XI, XII, XIII,
XIV, XV, XVI).  And, the ICO provides that the "State, in
consultation with USEPA, shall have the **sole discretion** in
determining" the appropriate remedial action at the Site.  (Id.,
Ex. D, III(B)(1)(emphasis added)).  The ICO further states that
all work pursuant to the ICO "shall be subject to approval by
the State," and shall be consistent with CERCLA, the NCP, and
the ICP.  (Id., Ex. D, VI).

The Villages reliance on Village of Carpentersville v.
Pollution Control Board, 553 N.E.2d 362 (Ill. 1990) is
misplaced.  The Village cites Capentersville in support of its
argument that when a municipality (such as the Village) is
specifically authorized to regulate the subject matter in a
manner not in conflict with State law, the municipality may pass
ordinances that are more restrictive than the State law.  The
argument is specious.  Defendants concede that the Village's
right to legislate in the field of cleaning up environmental
contamination; they challenge the Village's right to enforce its
ordinance if it conflicts with State law which is said to be the

25

case at issue.

In Carpentersville, the Illinois Supreme Court addressed the question of "whether a village zoning ordinance is preempted by a requirement set forth in a permit issued by the Environmental Protection Agency under the provisions of the Environmental Protection Act." Carpentersville, at 362.  The Village in that case sought to enforce a zoning ordinance limiting the height of a smoke stack on a pollution control facility.  The Court noted how previous decisions had held that, "due to the [IEPA's] express purpose of 'establishing a unified, state-wide program' to protect the environment, the Act preempted non-home rule regulations."  Id. at 364 (citing County of Kendall v. Avery Gravel Co. 463 N.E.2d 723 (Ill. 1984); County of Cook v. John Sexton Contractors Co., 389 N.E.2d 553 (Ill. 1979)).  However, the Court noted that amendments to the IEPA made clear that the Environmental Protection Act no longer preempts the application of certain local zoning ordinances. Specifically, Section 39(c) of the IEPA provides that no permit be given for the construction of a pollution control facility unless the necessary zoning approvals were obtained from "the unit of local government."  As a result, the Court distinguished earlier cases decided before the amendment to the IEPA that had prohibited a municipality from imposing requirements that directly conflict with the State's uniform program of

environmental regulation and held that the local Ordinance could
be enforced because the IEPA had been amended to spedcifically
allow for application of local ordinances in regulating the
height of smokestacks in conjunction with the issuance of
permits by Illinois EPA for such pollution control devices.
Carpentersville, at 367.

   Unlike the IEPA provisions in Carpenterville that had been
modified to allow for application of a local ordinance, the IEPA
was never amended to allow municipalities to regulate
remediation of hazardous waste releases.  In flagrant conflict
with the considered and phased process outlined in the ICP for
remediating hazardous substance releases currently being
implemented at the Site via the ICO, the Village's Complaint
seeks immediate (and undefined) completion of cleanup at the
Site.  With its nuisance claim and related prayer for relief,
the Village seeks to select the remedial actions Defendants must
take at the Site in violation of Illinois EPA §§ 4(l), 4(g), and
22.2(1) and ICP § 750.469, which gives the Illinois EPA sole
authority to make such decision.  Bottom line, the Village is
impermissibly interfering with the EPA mandated cleanup at the
Site.  See Carlson v. Vill. of Worth, 343 N.E.2d 493, 494 (Ill.
1976)(village's attempted regulation of landfill preempted by
landfill permitting process established by IEPA and related
regulations); County of Kendall v. Avery Gravel Co., 463 N.E.2d

723 (Ill. 1984)(regulations enacted pursuant to IEPA preempted county's zoning ordinances relating to strip mining).

Accordingly, all of the Village's claims for relief in this case is preempted by the IEPA.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is GRANTED.

ENTERED this  14th  day of May, 2007.

 s/Joe Billy McDade_____

Joe Billy McDade
United States District Judge
